IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


EDDIE A. CHURCH, SR.,

            Plaintiff,

    vs.                                    Civil Action 2:09-CV-009
                                           Judge Frost
                                           Magistrate Judge King

MICHAEL J. ASTRUE, Commissioner
of Social Security,

            Defendant.


                    REPORT AND RECOMMENDATION

         This is an action instituted under the provisions of 42 U.S.C.

§§405(g), 1383 for review of a final decision of the Commissioner of

Social Security denying plaintiff's application for supplemental security

income.  This matter is now before the Court on plaintiff's *Statement of

Errors* and the Commissioner's *Memorandum in Opposition.*

         Plaintiff Eddie A. Church filed his current application for

benefits alleging disability beginning January 3, 2005.[1]  The application

was denied initially and upon reconsideration, and plaintiff requested

a *de novo* hearing before an administrative law judge.

         On February 4, 2008, plaintiff, represented by counsel,

appeared and testified at the administrative hearing, as did Paul A.

Boyce, M.D., who testified as a medical expert, and Mark A. Pinti, who

testified as a vocational expert.  In a decision dated June 25, 2008, the

administrative law judge found that plaintiff's severe impairments

consist of a seizure disorder, a history of left shoulder rotator cuff

tear, chronic neck and back pain with remote evidence of lumbar and

------

    [1]The current application for benefits is apparently plaintiff's fifth such
application.  *See A.R.* 27.

cervical strain, and borderline intellectual functioning. However, the administrative law judge found that these impairments, whether considered singly or in combination, do not meet or equal a listed impairment. The administrative law judge went on to find that plaintiff has the residual functional capacity to perform medium work that does not require work above shoulder level on the left side, climbing of ropes, ladders or scaffolds, exposure to hazards, complex or detailed instructions or driving. Relying on the testimony of the vocational expert, the administrative law judge concluded that this residual functional capacity permits the performance of a significant number of jobs in the national economy, including such unskilled jobs as cleaner and dining room attendant, machine tender, laundry folder, assembler and inspector. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 2, 2008.

Plaintiff was 46 years of age on the date the administrative law judge issued his decision. He has no prior relevant work. The single dispositive issue in this case is whether plaintiff's severe mental impairment, characterized by the administrative law judge as borderline intellectual functioning, satisfies Listing 12.05, which addresses mental retardation.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Plaintiff contends that the administrative law judge erred in finding that his cognitive functioning neither met nor equaled Listing 12.05C. That listing mandates a finding of disability under the following circumstances:

> 12.05 *Mental Retardation and Autism:* Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates and supports onset of the impairment before age 22.
>
> The required level of severity of this disorder is met when the requirements in A,B,C, or D are satisfied.
>
>         *    *    *
>
> C. A valid verbal, performance, or full scale I.Q. of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

*     *     *

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05.

For purposes of Listing 12.05C, plaintiff must establish that (1) he suffers from "significantly subaverage general intellectual functioning," (2) he suffers from "deficits in adaptive functioning," (3) such deficits initially manifested during the developmental period (*i.e.,* before age 22), and (4) a valid I.Q. score between 60 through 70 *and* an additional physical or other mental impairment imposing an additional and significant work-related limitation of function. *See Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001). *See also Daniels v. Commissioner,* 70 Fed. Appx. 868, 872 (6th Cir. 2003), 2003 WL 21774004. To the extent that plaintiff contends that the administrative law judge erred in concluding that plaintiff's condition was not equivalent in severity to Listing 12.05C, plaintiff bears the burden of presenting "medical findings equal in severity to *all* criteria for the one most similar listed impairment." *Foster,* 279 F.3d at 355, quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in the original). Social Security regulations further provide that medical equivalence "must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §416.926(b).

Plaintiff testified at the administrative hearing that he lives with his fiancée and their minor child. He had a driver's license but it was suspended after his doctor gave notice of plaintiff's seizure condition. *A.R.* 701. He has a tenth grade education in special education classes. *A.R.* 702. He acknowledged grades of Ds and Fs. *A.R.* 728. He can read "[s]ome, but I have to use a magnifying glass." *A.R.* 702. Using a magnifying glass, plaintiff testified, he can read newspapers "except the real fine print, ..." *A.R.* 703. He is able to

write, "but it's real sloppy." *Id.* Plaintiff last worked in the 1990's, performing packing work for a very short period because his supervisor learned of plaintiff's seizure disorder. *A.R.* 703-05. He explained that he has not been able to work because of his seizure disorder: "[E]very time I put on the application I had seizures, nobody would call me." *A.R.* 704.

Plaintiff testified that he relies on his fiancée to care for their child and perform housework. *A.R.* 718. He "stay[s] on the couch most of the time." *A.R.* 719. He used to build models but has not done so since 1974. *A.R.* 719. He does not watch television nor does he read. *A.R.* 721.

The record indicates that two I.Q. tests have been administered to plaintiff over the years. In 1975, when plaintiff was in junior high school, he was referred by the principal for testing to determine eligibility for placement in special education classes.[2] On the WISC-R, plaintiff achieved a verbal I.Q. score of 72 and a performance I.Q. score of 68, which placed him in the "Defective Range." *A.R.* 240. Although plaintiff was at the time 13 years of age, he had a vocabulary at the 7 year, 10 month level. *Id.* It was determined that plaintiff qualified for special placement in the developmental disabilities program. *A.R.* 240-41.

In May 2003, when plaintiff was 41 years of age, he underwent a consultative psychological evaluation by James N. Spindler, M.S., upon referral by the state agency. Plaintiff appeared to the examiner as "intellectually slow but he knew the purpose of the meeting. ..." *A.R.*

---

[2]Plaintiff was not earlier placed in special education classes in the school system because of "the high class size" and because it was initially thought that "cultural deficiencies of his background" might be principally responsible for his basic lack of academic skills. *A.R.* 240.

310. Plaintiff was alert, knew the date and was oriented to place and person. *A.R.* 311. Mr. Spindler opined that, based on his clinical observations, plaintiff "appears to be functioning in the borderline range of intelligence." *A.R.* 311. On the WAIS-III, plaintiff achieved a verbal I.Q. score of 68, a performance I.Q. score of 76, and a full scale I.Q. score of 69. *A.R.* 312. According to Dr. Spindler, these scores fall "in the mild mental retardation range of intelligence, though he appears to be functioning in the borderline range as compared with others his age." *A.R.* 312. On the WMS-III, plaintiff placed in the low average to borderline ranges as compared with others his age. *A.R.* 312. On the WRAT-III (Reading), plaintiff's scores placed him at a 2.0 reading grade level. *Id.* Mr. Spindler diagnosed borderline intellectual functioning and placed plaintiff's GAF at 65, which is suggestive of an individual who is generally functioning pretty well with some meaningful interpersonal relationships. *A.R.* 313.

In June 2003, Derryck D. Richardson, Ph.D., reviewed the record and concluded that, despite I.Q. scores that fall within the mild mentally retarded range, "Clmt. appear to function in the borderline range." A.R. 317. According to Dr. Richardson, plaintiff would be limited to simple, routine tasks in a work setting. *Id.* In an assessment of plaintiff's functional limitations by reason of his mental impairments, Dr. Richardson indicated that plaintiff is no more than mildly impaired. *A.R.* 328.

In his decision, the administrative law judge noted the low I.Q. scores from plaintiff's school years and as administered by Mr. Spindler but nevertheless found that plaintiff's severe mental impairment consists of borderline intellectual functioning:

> Despite these low I.Q. scores, psychologist
> Spindler diagnosed borderline intellectual function

6

(rather than mental retardation). It was observed the claimant appeared to function at a borderline range. He had a history of schooling in a learning disability program but he appeared to have adequate knowledge and judgment for daily living. The claimant's testimony indicated that he had a driver's license and drove until his driver's license was suspended due to seizure-related issues. He appears to depend on his fiancée to do most of the chores around the house, but there is no credible evidence that this arrangement is based on the claimant's lack of sufficient cognitive resources. Thus, the record establishes the diagnosis of borderline intellectual functioning, which is severe as it would restrict the claimant from carrying out complex or detailed instructions. However, a diagnosis of mental retardation is not established.

*A.R.* 30-31.

The findings of the administrative law judge in this regard are substantially supported in the record by Mr. Spindler's consultative psychological evaluation and opinion and by the opinion of the state agency psychologist who, after reviewing the entire relevant record, also concluded that plaintiff is not mentally retarded but instead suffers from borderline intellectual functioning. Although plaintiff disagrees with those opinions and conclusions, because the findings of the administrative law judge are supported by substantial evidence, this Court is without authority to disturb those findings.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this action be **DISMISSED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be

filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


January 29, 2010                        *s/Norah McCann King*
                                        Norah M<sup>c</sup>Cann King
                                United States Magistrate Judge